Louis R. Mehlinger, of Washington, D. C., and John F. Sonnett, Asst. Atty. Gen., for defendant.

**NATIONAL CARLOADING CORPORATION v. UNITED STATES.**

No. 44867.

Court of Claims.

Feb. 4, 1946.

Before WHALEY, Chief Justice, and WHITAKER, JONES, LITTLETON, and MADDEN, Judges.

WHITAKER, Judge.

Plaintiff sues the defendant for the sum of $5,664.95, additional freight charges to which it claims it is entitled.

Plaintiff is a freight forwarder. It accepts from shippers less-than-carload lots of merchandise, combines it with sufficient other freight to make up a carload, and ships it in carload lots. It charges shippers the less-than-carload lot (LCL) rate, but it pays the transportation company the car-load-lot rate. In this way it makes its profit. In addition to the transportation of the merchandise, it furnishes shippers with pickup service, loading and unloading service, and warehouse and delivery service.

On January 29, 1935 it wrote the Procurement Division of the Treasury Department soliciting business. The Procurement Division in turn transmitted plaintiff's letter to the various agencies of the Government. Subsequently, the Traffic Manager of the Interior Department contacted plaintiff's representative at Balti-

more and arranged a conference between him and representatives of various governmental agencies in order to learn more definitely the nature of the service rendered by plaintiff and the charges made therefor, for the purpose of determining whether or not it would be advantageous to the Government to utilize plaintiff's services. This conference was held on April 18, 1935, at which there were present W. B. Fry, Purchasing Officer of the Interior Department, W. E. Hayghe, Chief of the Federal Traffic Section of the Procurement Division of the Treasury Department, and representatives of other governmental agencies. At this conference Mr. Moore, plaintiff's representative, detailed the services his company stood ready to render and stated the basis for the charges to be made therefor. This was later incorporated in a tariff entitled "Freight Tariff No. G-1000."

Prior to the publication of this tariff, but after the conference on April 18, 1935, to wit, on July 11, 1935, Mr. Fry, the Purchasing Officer and Traffic Manager of the Interior Department, wrote plaintiff a letter listing 2,424 items of equipment which it desired to ship from the points of origin to the destinations shown. The weight of each item was given. The letter concluded: "It is requested that you advise this office at the earliest possible date as to whether you will be in a position to handle these shipments. Please bear in mind that it may be necessary for you to store the shipments at the destinations, inasmuch as it is quite possible that the Division of Grazing will not have a representative available to receive the shipments at the destinations indicated."

On July 20, 1935 plaintiff orally informed this officer that it would handle the freight listed in the way requested. Subsequently, between July 22 and August 3, 1935, plaintiff received and had transported the items listed.

Plaintiff issued to the defendant its bills of lading and it transported the shipments on commercial bills of lading as the consignor. The bills of lading, made out by defendant and issued to it by plaintiff, contained the following or a similar notation: "Please request Mr. Ryan to advise you if there will be a Government representative at Montrose, Colorado, to receive the tractor. If not, it is understood you will unload and store the tractor until advised by Mr. Ryan to deliver."

A number of the items consisted of well-drilling machines, caterpillar tractors and wheel graders. Each of these articles weighed so much that the rate on a full carload was less than the LCL rate on the weight of one of them. Defendant paid plaintiff the carload.lot rate, less land grant deduction, for the carriage of these articles. Plaintiff claims it is entitled to the less than carload lot rate less land grant deduction. The difference between the amount paid plaintiff and the LCL rate, less land grant deduction, is $6,982.79.

Since plaintiff bore to the transportation company the relation of shipper it was not entitled to the land grant deduction and it paid the railroad company the full commercial rate. It would be a grave injustice if it were entitled to collect from the Government no more than the commercial rate less the land grant reduction.

When the Purchasing Agent of the Interior Department requested plaintiff to handle the shipments, he requested it to do so upon the basis outlined by plaintiff's representative at the conference on April 18, 1935. At that conference plaintiff had explained to defendant the basis for its charges and it had stated that it received only less than carload lots, and always charged less than carload lot rates. It explained that it made its profit by charging LCL rates and paying the transportation agency the carload lot rate. It also explained that the difference in these rates enabled it to render pickup, loading and unloading, warehouse, and delivery service, and also enabled it to absorb the land grant deduction. When the Purchasing Agent solicited plaintiff's services he solicited them with full knowledge of this and, therefore, he impliedly agreed to pay plaintiff on this basis. It is, of course, absurd to say that plaintiff agreed to carry the articles at carload lot rates, less land grant deductions, when it was required to pay the railroads the carload lot rate without the land grant deduction and, yet, that is the basis upon which settlement has been made with plaintiff.

The Government makes much of the point that plaintiff rendered the Government no service other than that which would have been rendered the Government by the transportation companies had the articles been shipped at carload lot rates. It so happens that this is true, but nevertheless plaintiff was requested to be in position to render the additional service of

unloading the shipments upon arrival and storing them until such time as the Government called for them. On each bill of lading the Government stated to plaintiff that they must ascertain whether or not a Government representative would be on hand to receive the shipment, and, if not, they were to unload it and store it. It was because of the Government's uncertainty as to whether or not its representative would be ready to receive the shipment upon arrival that they chose to avail themselves of plaintiff's services, rather than to ship the articles through the medium of the customary transportation companies.

■ The defendant says that Mr. Fry did not have authority to enter into this contract with plaintiff. This is not supported by the record. Executive Order 6166, 41 U.S.C.A. § 7 note, had vested in the Procurement Division of the Treasury Department the determination of policies and methods for the shipment of freight, among other things, but the testimony shows that the handling of individual shipments for the Interior Department had been delegated to that Department, with authority to contract for transportation at the lowest available rate, taking into consideration the necessity for any additional services, such as loading, unloading, warehouse, and delivery service. Unloading and warehouse service at destination was necessary in this case, and there is no showing that there was a rate for these services and for the transportation which was lower than plaintiff's. We are of the opinion that Mr. Fry had the authority to enter into the contract with plaintiff.

■ Defendant further says that plaintiff cannot recover because of the requirement of Revised Statutes, § 3744, 41 U.S.C.A. § 16, that contracts of the War, Navy, and Interior Departments be reduced to writing and signed by the contracting parties at the end thereof. It says that the letter of the Interior Department and plaintiff's bills of lading are not a sufficient compliance with that section, and it cites as authority therefor South Boston Iron Co. v. United States, 118 U.S. 37, 6 S.Ct. 928, 30 L.Ed. 69; Clark v. United States, 95 U.S. 539, 24 L.Ed. 518, and two opinions by this court. But, even though defendant may be correct in this, it is nevertheless true that plaintiff would be entitled to recover on a quantum meruit,[1] and we think the amount plaintiff seeks to recover is fair and just compensation for the services plaintiff was called upon to be ready to render. It is computed at the rates fixed in plaintiff's "Freight Tariff No. G-1000," and this tariff was drafted at a conference between plaintiff's representative and Mr. Hayghe, Chief of Federal Traffic Section, Procurement Division of the Treasury Department, who was the official designated by the Director of the Procurement Division to determine the policies and methods for all freight shipments for the Government. This tariff, therefore, sets out the rates which the parties have agreed are fair and reasonable.

■ Plaintiff is, therefore, entitled to recover on quantum meruit whether or not there has been a compliance with Revised Statutes § 3744.

As stated above, the difference between the amount paid plaintiff and the amount to which it is entitled is $6,982.79. However, plaintiff only sues for the sum of $5,664.95. Judgment, therefore, will be rendered in plaintiff's favor for the latter sum, to wit, $5,664.95. It is so ordered.

JONES and LITTLETON, Judges, and WHALEY, Chief Justice, concur.

MADDEN, Judge, took no part in the decision of this case.

---

[1] Clark v. United States, 95 U.S. 539, 24 L.Ed. 518; L. Schepp Co. v. United States, 61 Ct.Cl. 219.